# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **JERRY L. THOMAS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **No. CIV-08-1321-W** |
| | ) | |
| **DAVID PARKER,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing pro se, brings this action under 28 U.S.C. § 2241 seeking a writ of habeas corpus. Pursuant to an order by United States District Judge Lee R. West, the matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). A response to the petition has been filed, and Petitioner has replied. Thus, the matter is at issue and ready for disposition. For the following reasons, it is recommended that the petition be granted.

Although Petitioner is not challenging his conviction, Respondent notes that he is currently in the custody of the Oklahoma Department of Corrections (ODOC), serving a sentence of 150 years imprisonment following his conviction for first degree rape. District Court of Oklahoma County: Case No. CF-1981-1815. Response, p. 1. In this action, Petitioner claims that he was denied due process under the Fourteenth Amendment in connection with a prison disciplinary proceeding instituted during his confinement at the

James Crabtree Correctional Center,[1] and which resulted in a loss of earned credits. Petition, p. 2-3.  He also alleges that the misconduct charge was motivated by retaliation for his pursuit of an administrative grievance regarding the mail room clerk's refusal to mail six grievance appeals to the DOC administrative review authority.  Petition, Att. 1, 8.

## I. BACKGROUND

On April 20, 2007, Petitioner was charged with the misconduct offense of possession/manufacture of contraband.  Petition, Att. 1[2]; Response, Ex. 2, p. 1.  According to the misconduct report, Petitioner "had in his possession a home made Kaffiyeh [Kufi] cap, which was confiscated and tagged as contraband."  Response, Ex. 2, p. 1.  According to the statement of Warden Parker, possession of the Kufi violated the policy requiring all religious headgear to be commercially made for the purpose of religious worship.  Response, Ex. 2, p. 5 (Witness Discretionary Action Record).  A hearing was conducted on April 30, 2007, and Petitioner was found guilty.  Response, Ex. 2, p. 14.  The evidence listed in support of the finding of guilty was as follows: "Direct violation of OP-030112, attachment A, Religious Headgear.  Evidence reviewed and appears non-commercially made (as stated by inmate Thomas) charging report and credibility of Warden Parker and Captain Reed."  Id. As discipline, the hearing officer revoked thirty of Petitioner's earned credits.  Id.

---

[1]Petitioner has filed a notice that he is now confined at the Lawton Correctional Facility. [Doc. No. 14].

[2]Petitioner added nine handwritten pages to the "form" petition and he labeled these added pages as "Attachment" 1 through 9.  Thus, when the undersigned refers to a page as "Petition, Att." followed by a number, it is Petitioner's number system to which the undersigned refers.

Petitioner appealed to the facility head on May 7, 2007, alleging that he was not provided copies of evidence, not permitted the opportunity to present relevant evidence, received no written statement of the evidence utilized for a determination of guilt, and that there was no evidence to support the misconduct conviction.  Response, Ex. 3, p. 1.  He also alleged that homemade knit Kufi caps of commercial quality are allowed by de facto rule throughout the ODOC, and that he was only written up in retaliation for filing grievances. Id. at p. 2.  Petitioner's conviction was affirmed by the facility head on May 14, 2007, who found that due process was afforded to Petitioner.  Id. at p. 4.  Petitioner then appealed to the ODOC's Director, stating the same grounds and adding that the misconduct was issued by "Jim Reed in retaliation for my filing grievance against his wife," substantially burdening his freedom of religious expression.  Id. at p. 3.  The Director's Designee affirmed the misconduct offense conviction on June 11, 2007.  Id. at p. 6.

Petitioner then filed a petition for judicial review of the prison disciplinary action. District Court of Oklahoma County, CJ-2007-6226.  Response, Ex. 4.  The state district court found that due process was provided in accordance with Wolff v. McDonnell, 418 U.S. 539, 556 (1974), and that the decision was supported by "some evidence" as required by Superintendent v. Hill, 472 U.S. 445, 454 (1985). Response, Ex. 5 (Journal Entry of Judgment, Aug. 14, 2008).  Petitioner appealed to the Oklahoma Court of Criminal Appeals, and it affirmed the state district court's decision on November 26, 2008.  Response, Ex. 7 (Order Affirming District Court Order Reviewing Prison Disciplinary Proceeding Resulting in Revocation of Earned Credits, Case No. REC-2008-0845).

Petitioner now brings this action under 28 U.S.C. § 2241, alleging six grounds for relief.  In Ground One, Petitioner alleges that the "[Oklahoma Court of Criminal Appeals'] decision is clearly erroneous" because the prayer cap was on his approved property list, prayer caps made from hobby craft material are not contraband, and only items not listed on his approved property list are contraband.  Petition, p. 5.  In Ground Two, he alleges that the decision of the Oklahoma Court of Criminal Appeals finding that Petitioner received due process was clearly erroneous because contraband is defined as any item found in the offender's possession that is not listed on his property form, and he was not permitted to call the officer who inventoried his property upon arrival at JCCC – Officer Morton – and listed a prayer cap as approved property.  Id.  In Ground Three, Petitioner alleges that he was convicted without any evidence of possession of contraband.  Petition, Att. 1.  In Ground Four, he alleges that his right to due process was violated by the misconduct investigator's decision to disqualify Officer Morton as a witness.  Petition, Att. 5.  In Ground Five, he alleges that his right to due process was also violated by Assistant Attorney General Kari Y. Hawkins' "ex parte" communication with the state district judge; specifically, that she "initiated secret intrigue" by her submission of a proposed journal entry of judgment. Petition, Att. 6.  Sixth, and finally, Petitioner alleges that he was charged with the misconduct in retaliation for exercising his "First Amendment right to file a grievance."  Petition, Att. 8.

## II.  STANDARD OF REVIEW

At the outset, Respondent argues that the previous decisions of the Oklahoma state

courts regarding the merits of Petitioner's claims should receive the deferential review provided for by 28 U.S.C. § 2254(d)(1).  Response, p. 4. (citing <u>Williams v. Taylor</u>, 529 U.S. 362, 403 (2000)).  Although acknowledging the fact that this action arises under § 2241, and that the standard of review provisions of § 2254 do not apply, Respondent asserts without any authority that the federal court should grant such deference on the basis of comity and federalism.  Response, p. 4. Respondent fails to cite contrary authority from the Tenth Circuit Court of Appeals holding that in a case brought under § 2241, the federal district court applies de novo review over a state court's decision.  <u>Walck v. Edmondson</u>, 472 F.3d 1227, 1235 (10th Cir. 2007) (applying de novo standard to § 2241 petition of pretrial detainee).

In <u>Walck</u>, the Tenth Circuit Court of Appeals specifically rejected the respondent's argument for invocation of the deferential standard contained in § 2254(d) to cases brought under § 2241, explaining that the language of § 2254 clearly indicates that its provisions are only operable as to a petition for habeas relief filed by "a person in custody pursuant to the judgment of a State court." <u>Id.</u> at 1234.  The Court continued: *"Section 2241 's applicability greatly affects our standard of review* in that the deference normally accorded state court judgments under § 2254 does not apply. Instead, we review habeas claims made pursuant to § 2241, including Ms. Walck's, de novo." <u>Id.</u> at 1235 (emphasis added).

In <u>Thomas v. Jones</u>, No. CIV-08-790-W, 2008 WL 4693155, at *2 (W.D. Okla. Oct. 23, 2008)[3], <u>Walck</u> was applied to a § 2241 petition challenging a prison disciplinary action.

---

[3]This and any other unpublished disposition are cited pursuant to Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

The respondent in that case and the Respondent herein are both represented by the same counsel, yet counsel for Respondent here reiterates the same standard of review argument which was urged by him and specifically rejected by the Court in the prior Thomas case, less than two months before his response herein was filed.  Moreover, he cites nothing *in favor* of his argument and fails to either cite or distinguish Walck or Thomas, which are *squarely against* it. Instead, the Court's independent research revealed the controlling authority. Counsel has apparently forgotten his ethical obligation of candor to the Court, and is therefore cautioned to re-familiarize himself with Rule 3.3(a)(2), Rules of Professional Conduct, Okla. Stat. tit. 5, ch. 1, App. 3-A.

Accordingly, the undersigned declines to apply § 2254's deferential standard to this § 2241 action.  Instead, the state courts' decisions on the merits of Petitioner's claims will be reviewed de novo.

## III. DISCUSSION

### A.  STATE COURT ERROR

In considering the six grounds raised herein, the undersigned first notes that Grounds One, Two, and Five are couched in terms of errors allegedly committed by the state courts in the process of reviewing the revocation of earned credits.  In Grounds One and Two, Petitioner alleges that the state court decisions on the merits of his due process claim are "clearly erroneous." Petition, p. 5.[4] In Ground Five, Petitioner alleges that the state district

---

[4]Okla. Stat. tit 57, § 564.1 provides for judicial review of prison disciplinary proceedings that result in a loss of earned credits.  Habeas petitioners challenging the adequacy of prison disciplinary

court denied him due process by accepting an "ex parte" proposed judgment. Id. at Att. 6.

In making these arguments, Petitioner misapprehends the role of this Court in reviewing ODOC's revocation of credits. Federal courts do not sit as "super-appellate" courts to reconsider state court decisions. Harris v. Department of Corrections, 426 F. Supp. 350, 351 (W.D. Okla. 1977) (federal court does not "serve as an appellate or reviewing court for alleged illegal actions in state court ."); Robinson v. State of Oklahoma, 404 F.Supp. 1168, 1170 (W.D. Okla. 1975) ("Habeas corpus in the federal court does not serve as an additional appeal from state court conviction."). Instead, federal habeas relief is only available if the revocation of earned credits was done "in violation of the Constitution or laws or treaties of the United States." See 28 U.S.C. § 2241(c)(3). Moreover, as discussed above, no deference is given to the state courts' determination of the merits – completely ameliorating the effect of any state court error on this federal habeas action.

Furthermore, any error in the state judicial review of Petitioner's disciplinary proceeding would not entitle him to relief if the prison's revocation withstands constitutional scrutiny, because the state judicial review process is not the source of Petitioner's liberty interest. Cf. Doyle v. Oklahoma Bar Ass'n, 998 F.2d 1559, 1570 (10th Cir. 1993) ("Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement.") (quoting Olim v. Wakinekona, 461 U.S. 238, 250 (1983)). "The mere expectation of receiving a state afforded process does not

───────────────

proceedings must exhaust this remedy before pursuing federal relief pursuant to 28 U.S.C. § 2241. Magar v. Parker, 490 F.3d 816, 818-19 (10th Cir. 2007).

itself create an independent liberty interest protected by the Due Process Clause." Id. In fact, the statute providing for state judicial review makes this clear:

> The judicial review as provided in this section shall not be an independent assessment of the credibility of any witness or a weighing of the evidence, and there shall be no right to an error free proceeding or to confront accusers. The only remedy to be provided, if the court finds due process was not provided, is an order to the Department to provide due process.

57 Okla. Stat. § 564.1 (E). Thus, this Court must determine if Petitioner received constitutionally required due process in the *prison misconduct proceeding*, not whether the state courts erred in their *judicial review* of the prison's action: "On habeas review, the Court's role 'is limited to examining the events that occurred in the proceedings leading up to the petitioner's conviction.' Thus, when due process violations take place in a proceeding, the remedy is merely reconsideration rather than invalidation of the underlying conviction." Terry v. Jones, No. CIV-06-840-F, 2007 WL 998732, at * 9 (W.D.Okla. Mar. 30, 2007) (quoting United States v. Dago, 441 F.3d 1238, 1249  n.5 (10th Cir.2006)), certificate of appealability denied, 259 Fed. Appx. 85 (10th Cir. 2007), cert. denied, 128 S.Ct. 2970 (2008).

Finally, finding Grounds One and Two non-cognizable in a § 2241 proceeding has no practical effect on the outcome of this action, as Grounds Three and Four are based on the same facts and underlying legal theory.  Ground Five is without merit,[5] and if the claim is

---

[5]The Court has found the same argument as that raised in Ground Five to be without merit in another habeas action brought by this Petitioner.  Thomas v. Jones, CIV-08-790-W, Report and Recommendation, p. 4-6 (W.D. Okla. Sept. 22, 2008) (Bacharach, M.J.) (compliance with the state district court rule allowing the submission of a proposed journal entry of judgment was not an ex parte communication that deprived petitioner of due process).

without merit "the alleged irregularities in the state courts would not justify habeas relief" in any event.  Id.

Accordingly, Grounds One, Two and Five fail to state a claim for habeas relief and should not be considered by the Court.

### B.  DUE PROCESS

In Grounds Three and Four, Petitioner claims that he was deprived of due process in his prison disciplinary proceeding because the conviction was not supported by evidence, and he was not allowed to call as a witness the prison employee who signed a property inventory form listing Petitioner's prayer cap as "approved."   Petition, Att. 1, 5.   For the reasons discussed below, the undersigned recommends that relief be granted on Ground Six, making it unnecessary to address Petitioner's due process claims.

### C.  RETALIATION

In Ground Six, Petitioner alleges that he was charged with possession of contraband in retaliation for exercising his First Amendment right to file grievances.

Petitioner alleges that on the morning of April 20, 2007, he filed a grievance against mail room clerk Shannon Reed for refusing to allow him to use an "indigent legal disbursement"to mail six grievance appeals to ODOC's administrative office.  Petition, Att. 1, 8. Petitioner alleges that on the same afternoon, he attended Jum'ah congregational prayer services at JCCC, wearing the knit green prayer cap which was the subject of the misconduct offense charge.  Id.  He claims that he made the cap from hobby craft material he purchased, and that he had owned it since 1994.  Id.  He further claims that he had worn the cap every

day at JCCC since his arrival there in April 2006, and that it is listed on his approved property inventory list.  Id. at 1-2.  He claims that he had worn the cap in the presence of all officials and officers at JCCC, and was never told he was not allowed to have it.  Id. at Att. 2.

Petitioner alleges that about two hours after Jum'ah, another inmate came to inform him that an officer was looking for him.  Id.  He claims that when he found the officer, the officer ordered him to accompany him to a "punishment holding cell" because the warden wanted to see him.  Id.  He claims that after about an hour, he heard Warden Parker and Captain Jim Reed (who he alleges is the husband of the mail clerk against whom he filed the grievance that morning) approaching, and heard Warden Parker tell Reed that "they needed to find [Petitioner] dead hang[ing] from a thin string by the neck...."  Id.  He alleges that the following then occurred:

> They locked him up in retaliation for filing the grievance against Reed's wife. They threatened him, bullied him, intimidated him, told him he was turning all his staff against him because he was filing frivolous grievances. They tried to get him to dismiss his grievances. When he refused, Parker, in an angy [sic] rage, told him that he would make it hard for him to exhaust administrative remedies and would make him do the best he could to exhaust administrative grievances. He (Parker) then looked at the green prayer cap and told him it was contraband. Parker ordered Jim Reed to take it and write him up for contraband in retaliation.

Petition, Att. 2.  Elsewhere in the petition, he states:

> They unlocked his cell door, entered the cell, and Parker did all of the talking. They postured, bullied, intimidated, and threatened him. They coaxed and attempted to get him to dismiss the "frivolous grievance."  When that failed, Parker told him he would take his level 4, make it hard to exhaust remedies, make him do the best he could to exhaust, looked at his prayer [cap],

declared it contraband, and then ordered Reed to take the cap and right [sic] him up.

<u>Id.</u> at Att. 8.

In his response, Warden Parker does not dispute Petitioner's allegations regarding the events of April 20, 2007.  Instead, Respondent offers the affidavit of Becky Guffy, the grievance manager at JCCC:

> On April 20, 2007, offender Thomas submitted grievance number JCCC-07-64.  The procedure of any incoming mail to the Warden's Office is the Warden's Secretary stamps the date the mail is received into the office and it is then distributed to the appropriate inbox.  In this case to my in box as I review all grievances and prepare proposed responses before they are presented to the warden for approval.  The grievance in question was received on 4-20-07 but was not reviewed by me until 4-23-07 as evidenced by the date on the cover letter attached to grievance number JCCC-07-64 when it was returned unanswered.  Also, as I returned the grievance unanswered, the standard practice is the warden would not have seen the grievance.

Response, Ex. 9, p. 1.  The undersigned notes that the affidavit does not state whether or when Warden Parker saw the grievance, but is based on what would have customarily occurred.  More importantly, even if the affidavit was sufficient to show that Warden Parker never physically saw the grievance, it does not dispute Petitioner's allegation that Warden Parker was aware of it at the time of their meeting on April 20, 2007. There is no statement from either Warden Parker or Captain Reed, sworn or otherwise, disputing Petitioner's allegations regarding what occurred at their meeting on April 20, 2007.

Plaintiff's undisputed allegations are sufficient to show retaliation.  <u>Purkey v. Green</u>, No. 00-3218, 28 Fed. Appx. 736, 745-46 (10th Cir. Aug. 17, 2001) ("Because a prisoner must file a grievance in order to ultimately gain access to courts to state a claim for relief

under 42 U.S.C. § 1997e, then punishing him for actually filing grievances by placing him in disciplinary segregation would state a claim for a both an access to courts and a First Amendment violation."). Further, the Tenth Circuit Court of Appeals has stated that a disciplinary action motivated by retaliation deprives an inmate of a meaningful opportunity to be heard:

> Finally, [plaintiff's] presentation of evidence that defendants' motive in disciplining him was retaliation for prior lawsuits, and that the factfinders at his hearing had a hidden motive in finding him guilty, if believed, call into doubt whether [plaintiff] was given a meaningful opportunity to be heard. "The fundamental requirement of due process is 'the opportunity to be heard.' It is an opportunity which must be granted at a meaningful time and in a meaningful manner." When a prisoner asserts a valid challenge to the factfinders' neutrality, therefore, judicial review of disciplinary decisions must include an inquiry into whether discipline was imposed for an improper purpose.

Smith v. Maschner, 899 F.2d 940, 947 (10th Cir. 1990). The standard for evaluating claims of retaliatory discipline is as follows:

> We have held that "[p]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of his" constitutional rights. "This principle applies even where the action taken in retaliation would be otherwise permissible." As the Supreme Court made clear in Turner, however, it is not the role of the federal judiciary to scrutinize and interfere with the daily operations of a state prison, and our retaliation jurisprudence does not change this role. Obviously, an inmate is not inoculated from the normal conditions of confinement experienced by convicted felons serving time in prison merely because he has engaged in protected activity. Accordingly, a plaintiff "must prove that 'but for' the retaliatory motive, the incidents to which he refers, including the disciplinary action, would not have taken place." An inmate claiming retaliation must "allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights."

Peterson v. Shanks, 149 F.3d 1140, 1144 (10th Cir. 1998)) (citations omitted); see also Fogle

v. Pierson, 435 F.3d 1252, 1263-64 (10th Cir 2006.).  Thus, two things are required to make a showing of retaliatory discipline: a showing that "but for" the retaliatory motive, the disciplinary action would not have occurred; and (2) specific facts showing retaliation because of the exercise of the prisoner's constitutional rights.  Peterson, 149 F.3d at 1144. Here, the undersigned finds that Petitioner has made both showings.

First, Petitioner alleges that Respondent took his prayer cap and charged him with a misconduct offense in anger after Petitioner refused to drop his grievance, and that Petitioner had worn the same prayer cap for the entire preceding year without incident. Petition, Att. 2.  He further alleges that he arrived at JCCC with the same prayer cap that is listed as "approved" on his Inmate Property Inventory Form. Petition, Att. 3; see Response, Ex. 8. As noted, neither Respondent nor the other prison official in the meeting submitted anything disputing Petitioner's recollection of the events in question.  These facts support a finding that "but for" Petitioner's refusal to withdraw his grievance as requested, the prayer cap would not have been identified as contraband by Respondent.

Second, Petitioner's fact allegations are specific. Petitioner was obviously a witness to what was said and done in the meeting with Warden Parker and Captain Reed, and based on this personal knowledge, he specifically alleges that Respondent (1) summoned Petitioner to a holding cell in order to discuss his grievance; (2) made Petitioner wait in a cold holding cell for about an hour; (3) told Captain Reed as they approached that "they needed to find [him] dead hang[ing] from a thin string by the neck in one of these cells"; (4) asked Petitioner to withdraw the grievance; (5) became angry when Petitioner refused; (6) pledged

13

to make future exhaustion difficult; and (7) at the end of the meeting angrily ordered Captain

Reed to confiscate the prayer cap as contraband and to write him up for contraband.

Petitioner also specifically alleges that he openly possessed the Kufi for a year at JCCC

without incident, that the prayer cap was listed as approved on his inventory form, and that

he was not permitted to call the employee who inventoried his possessions as a witness.[6]

Because neither of the other two attendees at the meeting nor anyone else with

personal knowledge of the relevant events has offered any contrary version of these specific

allegations, the undersigned finds them to be undisputed.   Furthermore, in light of

Petitioner's specific and undisputed allegations[7] regarding what occurred during his meeting

with Warden Parker on April 20, 2007, the undersigned finds that but for the retaliatory

---

[6]Respondent represents that the investigator opted to take the statement of Jessica Morton, rather than call her as a witness at the disciplinary hearing.  However, the record shows this representation to not be accurate.  Instead, Morton was disqualified as a witness altogether. Compare Response, p. 2 with Response, Ex. 2 p. 6.  Respondent argues the relevancy of the property inventory, stating that "the bottom line is that two wrongs do not make a right."  Response, p. 10. However, unconstitutional retaliation can occur even when the action taken in retaliation would be otherwise permissible.  Peterson, 149 F.3d at 1144.  Thus, if the Kufi was approved upon Petitioner's arrival at JCCC, and he then wore it daily for a year without incident, these facts tend to show that Warden Parker's decision to issue a misconduct charge for possession of the Kufi as contraband was retaliatory.

[7]Neither party has requested an evidentiary hearing, and one is not required here because Respondent has failed to offer any evidentiary material disputing the relevant allegations. See Williamson v. Ward, 110 F.3d 1508, 1513 (10th Cir. 1997) (district court did not act improperly when it failed to hold an evidentiary hearing and relied on uncontroverted affidavits); 28 U.S.C. 2246 (on application for a writ of habeas corpus, evidence may be taken by affidavit in the discretion of the court).  The petition herein was signed under penalty of perjury, and thus the allegations therein have the force and effect of an affidavit. Hall v. Furlong,  77 F.3d 361, 363, n. 2 (10th Cir. 1996) ("habeas petition which ...was made under penalty of perjury in compliance with 28 U.S.C. § 1746 ...had the force of an affidavit or sworn declaration")

motivation of Warden Parker, Petitioner would not have been charged with possession of contraband for wearing his homemade Kufi.

The habeas corpus statute authorizes a federal court to dispose of habeas petitions "as law and justice require." 28 U.S.C. § 2243. In the ordinary course, remand for a disciplinary proceeding that comports with constitutional requirements would be fitting. However, because Petitioner's disciplinary proceeding was the result of a retaliation, a remand alone cannot remedy the constitutional violation. Accordingly, it is recommended that the Court direct Respondent to expunge Petitioner's disciplinary conviction and return any earned credits which were revoked pursuant to that conviction.

## RECOMMENDATION

In light of the foregoing, it is hereby recommended that the petition for a writ of habeas corpus be granted, and that Respondent be directed to expunge Petitioner's April 30, 2007, disciplinary conviction and return any earned credits revoked as a result of that conviction. In light of this recommendation, Petitioner's motion for extension of time, motion for discovery, and motion to supplement [Doc. Nos.11, 12, 13] are hereby denied as moot. The parties are advised of their right to file an objection to this Report and Recommendation with the Clerk of this Court on or before March 3, 2009, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1. The parties are further advised that failure to file a timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. Moore v. United States, 950 F.2d 656 (10th Cir. 1991). This Report and Recommendation disposes of all the issues referred to the

15

undersigned Magistrate Judge in the captioned matter.

**ENTERED this 11th day of February, 2009.**

_____
DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE